IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PATRICK FEARY,

     Plaintiff,

     vs.                                                          Civ. No. 16-767 KK

NANCY A. BERRYHILL,[1]
**Acting Commissioner of Social Security,**

     Defendant.

## MEMORANDUM OPINION AND ORDER[2]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 12) filed November 25, 2016 in support of Plaintiff Patrick Feary's ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, ("Defendant" or "Commissioner") denying Plaintiff's claim for Title II disability insurance benefits and for Title XVI supplemental security income benefits. On February 6, 2017, Plaintiff filed his Motion to Reverse and Remand for Rehearing With Supporting Memorandum ("Motion"). (Doc. 17.) The Commissioner filed a Response in opposition on April 7, 2017 (Doc. 19), and Plaintiff filed a Reply on April 21, 2017. (Doc. 20.) The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is not well taken and is **DENIED.**

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill is substituted for Carolyn Colvin as the Acting Commissioner of the Social Security Administration. Fed. R. Civ. P. 25(d).

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Doc. 22.)

I. **Background and Procedural Record**

Claimant Patrick Feary ("Mr. Feary") alleges that he became disabled on February 3, 2011, at the age of thirty-three because of severe rheumatoid arthritis and obesity. (Tr. 95-96, 97-102, 142.[3]) Mr. Feary is a high school graduate, and worked as a laborer and laborer/forklift driver. (Tr. 143.)

On May 26, 2011, Mr. Feary protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.* (Tr. 95-96, 138.) On June 22, 2011, Mr. Feary filed for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq. (Tr. 97-102.) Mr. Feary's applications were initially denied on August 19, 2011. (Tr. 53, 54, 60-63.) They were denied again at reconsideration on October 11, 2011. (Tr. 55, 56, 67, 68.) On October 21, 2011, Mr. Feary requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 69-70.) ALJ Daniel Dadabo conducted a hearing on October 11, 2012. (Tr. 20-52.) Mr. Feary appeared in person at the hearing and was represented by Attorney Stephen McCarty.[4] (*Id.*) The ALJ took testimony from Mr. Feary (Tr. 24-42), and an impartial vocational expert ("VE"), Craig Johnston (Tr. 42-51). On December 11, 2012, the ALJ issued an unfavorable decision. (Tr. 8-18.) On January 31, 2014, the Appeals Council issued its decision denying Mr. Feary's request for review and upholding the ALJ's final decision. (Tr. 1-5.)

On June 26, 2014, Mr. Feary timely filed a Complaint seeking judicial review of the Commissioner's final decision. (USDC Civ. No. 14-301 CG, Doc. 1.) The parties fully briefed the issues raised for judicial review. (*Id.*, Docs. 15, 17, 18.) On February 23, 2015, Magistrate

---

[3] Citations to "Tr." are to the Transcript of the Administrative Record (Doc. 12) that was lodged with the Court on November 25, 2016.

[4] Mr. Feary is represented in these proceedings by Attorney Michael Armstrong.

Judge Carmen Garza, presiding by consent, entered an Order Granting Plaintiff's Motion to Reverse and Remand. (*Id.*, Doc. 20, Tr. 523-37.) Judge Garza held that the ALJ erred in failing to expressly address Dr. Lucio Martinez's opinion. (Tr. 536.)

On January 20, 2016, ALJ D'Lisa Simmons conducted a second hearing pursuant to the Appeals Council's order remanding the case.[5] (Tr. 470-502.) Mr. Feary appeared in person at the hearing with his attorney Michael Armstrong. (*Id.*, Tr. 589.) The ALJ took testimony from Mr. Feary (Tr. 476-489), and from an impartial VE, Diane Webber (Tr. 490-501). On March 4, 2016, the ALJ issued an unfavorable decision. (Tr. 444-463.) Because this case had already been remanded following judicial review, Mr. Feary did not file written exceptions with the Appeals Council and instead timely filed the instant action before this Court as permitted by 20 C.F.R. §§ 404.984(d), 416.1484(d).

## II. **Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Commissioner's decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d

---

[5] Prior to the hearing, Mr. Feary's counsel submitted a pre-hearing memorandum in which he informed the ALJ that Mr. Feary had returned to work in June 2014 and was therefore amending his claims to a closed period from February 3, 2011, through June 2014. (Tr. 681.)

1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

In considering an application for disability insurance benefits, the Commissioner uses a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The claimant bears the burden of establishing a prima facie case of disability at steps one through four. 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan v. Barnhart,* 399 F.3d 1257, 1261 (10th Cir. 2005). If the claimant successfully meets that burden, the burden of proof shifts to the Commissioner at step five to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. 404.1520(a)(v), 416.920(a)(v); *Grogan*, 399 F.3d at 1261.

### III. Analysis

The ALJ made her decision that Mr. Feary was not disabled at step five of the sequential evaluation. She found that Mr. Feary had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except

> he can sit, stand, or walk a total of 6 hours each, intermittently, throughout the 8-hour workday; frequently reach; frequently handle bilaterally; frequently finger bilaterally; no job requiring use of scaffolding, ropes, or ladders; should avoid hazardous work environments involving use of dangerous machinery or exposure to unprotected heights; no exposure to environments with extreme cold; and should alternate between sitting and standing every 30 to 35 minutes.

(Tr. 451.) Based on the RFC and the testimony of the VE, the ALJ concluded that considering Mr. Feary's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform and that he was therefore not disabled. (Tr. 461.)

4

Mr. Feary asserts three arguments in support of his Motion as follows: (1) the ALJ improperly rejected Dr. Lucio Martinez's medical opinion; (2) the ALJ's RFC findings were internally inconsistent; and (3) the ALJ failed to resolve the conflict between the DOT and the VE's testimony regarding Mr. Feary's need to alternate between sitting and standing for short periods of time. (Doc. 17 at 15-24.) For the reasons discussed below, the Court finds that the ALJ applied the correct legal standards in determining that Mr. Feary is not disabled and that her determination is supported by substantial evidence.

A. **Treating Physician Dr. Lucio Martinez**

Mr. Feary saw Dr. Lucio Martinez eight times over thirteen months from January 7, 2010, through February 24, 2011. (Tr. 890, 892, 895, 898, 900, 904-05, 913, 918.) Mr. Feary's chief complaints at those appointments were hypertension and diverticulitis, although he also complained at some visits of increased arthritic pain in his hands, knees and left ankle for which Dr. Martinez referred him to rheumatologist Dr. Rovinder Singh Saini. (*Id.*) Dr. Martinez performed brief physical exams at each of the eight visits and noted for each exam, *inter alia*, that Mr. Feary had no extremity cyanosis, clubbing or edema.[6] (*Id.*) On August 23, 2011, Dr. Martinez completed an Arthritic Report (Degenerative or Inflammatory) on Mr. Feary's behalf. (Tr. 272-73.) He noted that Mr. Feary complained of pain, tenderness, stiffness, redness, warmth and swelling in his ankles, knees, hips, fingers and wrists, due to rheumatoid arthritis and morbid obesity. (Tr. 272.) Dr. Martinez indicated physical findings of edema and swelling in Mr. Feary's fingers and toes, mild redness, and no warmth. (*Id.*) Dr. Martinez did not measure Mr. Feary's grip, but noted some swelling in his thumbs. (*Id.*) Dr. Martinez also noted that Mr. Feary had loss of joint motion in his fingers and toes. (Tr. 273.) Dr. Martinez indicated that Mr. Feary had normal ambulation and gait, and did not need an assistive device. (*Id.*)

---

[6] On November 11, 2010, Dr. Martinez noted that he deferred a joint exam to Dr. Singh. (Tr. 900.)

Dr. Martinez assessed that Mr. Feary had (1) significant limitations in his ability to do repetitive reaching, handling or fingering; (2) significant limitations in his ability to grasp, turn and twist objects; (3) occasional difficulties with holding utensils and turning a door knob; (4) difficulties with buttoning, zipping, and picking up a coin; and (5) difficulties with waist level reaching. (Tr. 273). Dr. Martinez assessed that Mr. Feary could stand or walk for twenty minutes at a stretch, could sit for four hours at a stretch, must assume an alternate position for ten minutes to obtain relief, and must be in a job that permits him to shift positions at will from sitting, standing and walking. (Tr. 273-74.)

The ALJ accorded "partial weight" to Dr. Martinez's clinical findings, "significant weight" to his treating records, and "little weight" to his medical source statement. (Tr. 452.) Mr. Feary argues that the ALJ erred in rejecting Dr. Martinez's opinion because she failed to perform the requisite two-step analysis for weighing treating doctor opinions. (Doc. 17 at 16-20.) Mr. Feary further argues that the reasons the ALJ provided for rejecting Dr. Martinez's opinion are illegitimate and unsupported. (*Id*.) Mr. Feary explains that the ALJ overlooked the clinical signs that supported Dr. Martinez's assessment, misapprehended the nature of rheumatoid arthritis, and relied on certain clinical findings from other providers while rejecting others. (*Id.*) The Commissioner contends, and the Court agrees, that it is clear in the ALJ's decision the weight she accorded Dr. Martinez's opinion, and the ALJ provided good reasons supported by substantial evidence for the weight she accorded. (Doc. 19 at 5-8.)

The ALJ must follow a specific procedure when weighing a treating physician's opinion. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must decide whether a treating doctor's opinion commands controlling weight. *Id.* A treating doctor's opinion must be accorded controlling weight "if it is well-supported by medically acceptable clinical or

laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (applying SSR 96-2p, 1996 WL 374188, at *2)).[7] If a treating doctor's opinion does not meet this standard, the opinion is still entitled to deference to some extent as determined under the second step of the process. *Id.* In this second step, the ALJ must determine the weight to accord the treating physician by analyzing the treating doctor's opinion against the several factors provided in 20 C.F.R. §§ 404.1527(c) and 416.927(c).[8] *Id.* The ALJ is not required to "apply expressly" every relevant factor. *Oldham*, 509 F.3d at 1258. "Under the regulations, the agency rulings, and our case law, an ALJ must give good reasons . . . for the weight assigned to a treating physician's opinion," that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley*, 373 F.3d at 1119 (quoting *Watkins*, 350 F.3d at 1300). Finally, if the ALJ rejects the opinion completely, he must then give "'specific, legitimate reasons'" for doing so. *Watkins*, 350 F.3d at 1301 (citing *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (quoting *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987)).

The ALJ satisfied both parts of the two-part inquiry *Krauser* requires. 638 F.3d at 1330. First, although the ALJ did not explicitly state that Dr. Martinez's opinion was not entitled to controlling weight, the weight the ALJ accorded Dr. Martinez's opinion was sufficiently specific. Here, the ALJ stated she accorded "partial weight" to Dr. Martinez's clinical findings, "significant weight" to his treating records, and "little weight" to his medical source statement.

---

[7] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

[8] These factors include examining relationship, treatment relationship, supportability, consistency, specialization and other factors. 20 C.F.R. §§ 404.1527(c) and 416.927(c).

(Tr. 452.) As such, the ALJ made clear to subsequent reviewers the weight she was according to Dr. Martinez's opinion as she was required to do. *See Tarpley v. Colvin*, 601 F. App'x 641, 643-44 (10th Cir. 2015) (finding ALJ's failure to explicitly state whether treating physician was entitled to controlling weight was harmless where ALJ adequately explained weight given); *Watkins*, 350 F.3d at 1300 (an ALJ's decision must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight). Thus, because it is clear from the decision that the ALJ declined to give controlling weight to Dr. Martinez's opinion, the Court will not reverse on this ground. *Mays v. Colvin*, 739 F.3d 369, 575 (10th Cir. 2014).

Second, although the ALJ did not expressly apply the regulatory factors, her decision considered them, and she provided specific and legitimate reasons for the weight she accorded Dr. Martinez's opinion that are supported by substantial evidence. In her decision, the ALJ noted (1) that Dr. Martinez was a family practice physician; (2) that his physical examinations of Mr. Feary, albeit "quite scant," consistently noted no extremity cyanosis, clubbing, or edema; (3) that Dr. Martinez had cautioned Mr. Feary regarding applying for disability benefits because of the potential health consequences related to inactivity; and (4) that Dr. Martinez's Arthritic Report was internally inconsistent because he indicated on the one hand that Mr. Feary required no assistive device and had normal ambulation and gait, but on the other hand assessed that he could only walk for about 20 minutes. (Tr. 452.) Mr. Feary addressed two of these findings and argues that Dr. Martinez was not discouraging him from obtaining disability benefits, but was "simply advising [him] to stay active" even if he did obtain disability benefits. (Doc. 17 at 18.) Mr. Feary further argues that Dr. Martinez's assessment was not internally inconsistent because, contrary to the ALJ's finding, Dr. Martinez opined that Mr. Feary only had limitations with

8

standing, but had "no ambulatory issues."[9]  (*Id.* at 17.)  The Court is not persuaded.  As to the latter argument, Dr. Martinez indicated at paragraph numbered "9" of the Arthritic Report that Mr. Feary could only stand *or walk* "about 20 mins."[10]  (Tr. 273.)  As to the former, whether Dr. Martinez was encouraging Mr. Feary to stay active or discouraging him from applying for disability, the record supports that Dr. Martinez expressed his concern that Mr. Feary not become "idle" and did not think his medical impairments precluded physical activity.  (Tr. 918.)  The record, therefore, supports the ALJ's findings and they are legitimate reasons for according less weight to Dr. Martinez's assessment.  *See* 20 C.F.R. §§ 404.1527(c)(3) and (5) and 416.927(c)(3) and (5) (generally more weight will be given to medical source opinions that are supported by relevant evidence, particularly medical signs and laboratory findings, and to specialists who provide medical opinions about medical issues related to his or her area of specialty); *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) ("Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence.") (quoting *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995)).

The ALJ further explained that Dr. Martinez's assessment was inconsistent with the record as a whole.  The ALJ noted that on August 9, 2011, approximately two weeks *before* Dr. Martinez's completion of the Arthritic Report, Mr. Feary's treating neurologist, Dr. Farouk

---

[9] Mr. Feary also argues that the ALJ ignored that Dr. Martinez "supported his opinion" with clinical findings in the Arthritic Report that Mr. Feary had joint tenderness, redness, warmth, swelling, deformity and loss of motion.  (Doc. 17 at 17.)  Mr. Feary, however, misreads the Arthritic Report.  In paragraph numbered "4" of the Arthritic Report, Dr. Martinez noted Mr. Feary's *complaints*, which included pain, tenderness, stiffness, redness, warmth and swelling in his ankles, knees, hips, fingers and wrists.  (Tr. 272.)  In paragraph numbered "5," Dr. Martinez's *physical findings* indicated no deformity, no ankylosis, no atrophy, swelling in fingers and toes, mild redness, and no warmth.  (*Id.*)  In paragraph numbered "6," Dr. Martinez indicated he did *not* test Mr. Feary's grip, but noted he had some swelling in his thumbs.  (*Id.*)  In paragraph numbered "7," Dr. Martinez indicated that Mr. Feary had loss of joint motion in his fingers and toes.  (Tr. 273.)  Thus, Dr. Martinez's clinical findings, even if overlooked, were not to the degree that Mr. Feary suggests.

[10] At paragraph numbered "10" of the Arthritic Report, Dr. Martinez indicated that Mr. Feary could stand for 20 minutes at a stretch and sit for four hours at a stretch.  (Tr. 273.)  Paragraph 10 does not inquire about a claimant's walking limitations.  (*Id.*)

9

Y. Khan, M.D., Ph.D. examined him. (Tr. 458.) The ALJ explained that Dr. Khan found on physical exam that Mr. Feary's motor strength was 5/5 through all four extremities and muscle groups, that his sensory examination was normal, and that Mr. Feary successfully withstood postural challenges. (*Id.*) The ALJ further explained that on October 18, 2011, approximately eight weeks *after* Dr. Martinez's completion of the Arthritic Report, Mr. Feary's treating rheumatologist, Dr. Rovinder Singh Saini, examined him. (Tr. 406-08.) The ALJ explained that Dr. Singh found on physical exam that Mr. Feary had good grip in his hands with good range of motion, no active synovitis in his elbows, shoulders, or lower extremities, and no lower extremity edema. (Tr. 458.) Dr. Singh also found that Mr. Feary had some tenderness over the lateral, collateral ligament of the left knee, but that his range of motion was good and there was no crepitus. (*Id.*) Finally, Dr. Singh noted at that visit that Mr. Feary reported feeling "90 percent better" on Enbrel, although he had experienced some increased arthritic symptoms with the weather change. (*Id.*)

Mr. Feary argues that the ALJ improperly relied on certain clinical findings from these providers while rejecting other findings. (Doc. 17 at 18-20.) For example, Mr. Feary argues that on physical exam on August 17, 2011, Dr. Khan noted that no postural challenges were done "due to safety concerns."[11] (*Id.* at 19.) He also contends that Dr. Singh's February 13, 2012, note indicated Mr. Feary was experiencing some increased joint swelling,[12] and that Dr. Singh

---

[11] Mr. Feary saw Dr. Khan on August 17, 2011, for an unscheduled office visit following Mr. Feary's emergency room visit two days prior for a migraine headache. (Tr. 269.) Dr. Khan's physical exam on this date reveals that Mr. Feary's gait was normal and that he had normal muscle tone and strength in all four extremities. (Tr. 270.)

[12] Mr. Feary saw Dr. Singh on February 13, 2012, in follow up for rheumatoid arthritis. (Tr. 410.) Mr. Feary complained of increasing symptoms and pain in his hands at times and more pain in his knees. (*Id.*) On physical exam, Dr. Singh indicated that Mr. Feary had exceptionally good grips in his hands; that his wrists were slightly swollen on the right side; that his elbows and shoulders had good range of motion; that his hip joints were normal; that his knees were both inflamed; that his ankles were tender with good range of motion; and that his midfeet and toes were tender. (*Id.*) In follow up on April 11, 2012, on physical exam Dr. Singh noted that Mr. Feary had

twice noted that he agreed with Mr. Feary's decision to seek disability because he had no stamina to sustain work.[13] (*Id.* at 20.) Mr. Feary's argument essentially asks the Court to reweigh the evidence. The Court will not do so. *See Oldham v. Astrue*, 509 F.3d 1254, 1257-58 (10th Cir. 2007) ("We review only the sufficiency of the evidence, not its weight . . . . Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views . . . ."). Here, the record supports the ALJ's findings and they are legitimate reasons for according less weight to Dr. Martinez's opinion. *See* 20 C.F.R. §§ 404.1527(c)(4) and 416.927(c)(4) (generally more weight will be given to medical source opinions that are consistent with the record as a whole).

For the foregoing reasons, the Court finds that the ALJ applied the correct legal standard in evaluating Dr. Martinez's opinion and provided legitimate reasons that are supported by substantial evidence for the weight she accorded his opinion. There is no reversible error on this point.

### B.     The RFC Is Not Internally Inconsistent

Mr. Feary argues that the ALJ's RFC is internally inconsistent because she determined that Mr. Feary could sit, stand or walk a total of 6 hours each, intermittently, throughout the 8-hour workday, but also determined that Mr. Feary should alternate between sitting and standing every 30 to 35 minutes. (Doc. 17 at 20-21.) In so doing, Mr. Feary argues that the ALJ effectively restricted Mr. Feary to sitting and standing/walking for a total of 4 hours each in an

---

exceptionally good grips in his hands; his elbows and shoulders had good range of motion; and there was no active synovitis in his lower extremities. (Tr. 413.) Dr. Singh further noted that Mr. Feary was doing well on Enbrel. (*Id.*)

[13] On January 17, 2011, Mr. Feary told Dr. Singh he was thinking of going on disability. (Tr. 238.) Dr. Singh noted that he thought it was a good idea because he had been treating Mr. Feary for "2 or 3 years." (*Id.*) The record indicates, however, that Dr. Singh had only been treating Mr. Feary since February 23, 2010, or approximately eleven months. (Tr. 224-26.) On August 17, 2011, Dr. Singh noted his opinion that Mr. Feary was not able to go back to his physically demanding job in the factory; however, he encouraged Mr. Feary to get some other job training for a job that was not so physically demanding on his joints. (Tr. 255-56.)

8-hour workday. (*Id.*) Mr. Feary further argues that in light of this inconsistency, the ALJ's hypothetical to the VE was imprecise and the ALJ improperly relied on the VE's testimony as substantial evidence. (*Id.*) The Commissioner contends that Mr. Feary's need to alternate between sitting and standing every 30 to 35 minutes did not imply that he needed to sit for 30 minutes and then stand for 30 minutes throughout the workday, but instead, as clarified by the VE, meant that Mr. Feary would need to change positions for short periods of time throughout the day. (Doc. 19 at 8-9.) The Court agrees.

The ALJ's RFC did not restrict Mr. Feary to sitting and standing/walking for a total of 4 hours each in an 8-hour workday. A *full range* of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday, or sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls. SSR 83-10, 1983 WL 31251, at *5-6; *see also* 20 C.F.R. §§ 404.1567(b), 416.967(b) (defining that a job is in the light category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls). In other words, a claimant capable of performing a full range of light work must be able to do all of these activities throughout an eight-hour workday, or any one of them for up to six hours if necessary. *Id.* Here, the ALJ determined that Mr. Feary could sit, stand or walk in any combination intermittently throughout the day, or for up to six hours as to one activity if necessary, but that he would need to alternate between sitting and standing every 30 to 35 minutes to the extent he remained in one position. (Tr. 451.) When the ALJ provided the hypothetical to the VE, the VE requested clarification regarding the amount of time the alternate position must be assumed and specifically asked whether "it would just be sitting for a short period and standing for a short period," to which the ALJ responded affirmatively. (Tr. 496.) The ALJ therefore related with precision to the VE

12

Mr. Feary's need to alternate between sitting and standing as she was required to do. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (testimony elicited by hypothetical questions must relate with precision all of claimant's impairments to constitute substantial evidence). Further, the hearing testimony makes clear that the ALJ was *not* effectively restricting Mr. Feary to sitting and standing/walking for a total of 4 hours each in an 8-hour workday, but to alternating between sitting and standing for short periods of time every 30 to 35 minutes as necessary. As such, Mr. Feary's arguments necessarily fail.

Moreover, the rulings contemplate special situations in which the medical facts lead to an assessment of RFC which is compatible with the performance of light work except that the person must alternate periods of sitting and standing. SSR 83-12, 1983 WL 31253, at *4. In those special situations, a VE should be consulted to clarify the implication for the occupational base. *Id.* The ALJ did so here.

For these reasons, the Court finds that the ALJ's RFC determination is not internally inconsistent. The Court further finds that the VE's testimony elicited by the ALJ's hypothetical question related precisely to Mr. Feary's need to alternate between sitting and standing for short periods of time and that the ALJ appropriately relied on the VE's testimony as substantial evidence. There is no reversible error on this point.

### C. The ALJ's Hypothetical and the VE's Testimony Directly Addressed Mr. Feary's Need to Alternate Between Sitting and Standing

Mr. Feary's final argument rests on his assertion that there was a recognized conflict between the VE's testimony and the DOT related to his limitation to alternate between sitting and standing for short periods of time that the ALJ failed to resolve. (Doc. 17 at 23-24.) Mr. Feary relies on the same argument that because the ALJ's RFC effectively restricted him to sitting and standing/walking for a total of 4 hours each in an 8-hour workday the VE's testimony

was in conflict with the DOT. (*Id.*) The Court has already rejected Mr. Feary's argument that the ALJ's RFC was internally inconsistent and does not find it persuasive here. *See* Section III.B., *supra*. Moreover, the Court is not persuaded there was an apparent conflict to resolve.

The ALJ has an affirmative duty to question a vocational expert about the source of her opinion and any deviations from the DOT. *Haddock*, 196 F.3d at 1091; SSR 00-4p, 2000 WL 1898704, at *4. Further, the absence of a limitation in the DOT does not necessarily eliminate an ALJ's duty of inquiry.[14] That said, the Tenth Circuit has held in unpublished cases that a VE's testimony about the availability of jobs with a sit/stand option does not raise an apparent conflict with the DOT simply because the DOT does not discuss the availability of a sit/stand option. *See Wahpakeche v. Colvin*, 640 F. App'x 781, 785-86 (10th Cir. 2016) (unpublished) (holding that "DOT's silence concerning stand/sit options" for a specific job does not constitute a conflict with a VE's testimony that a claimant needs stand/sit options to perform that job); *see also Newburn v. Barnhart*, 62 F. App'x 300, 304 (10th Cir. 2003) (unpublished) (holding there was no unresolved discrepancy between the VE's testimony and the DOT where the ALJ directly addressed the issue of whether the designated jobs could be performed with the specified limitations on hours of standing or walking). Similarly here, the Court is not persuaded that the VE's identification of certain jobs from the DOT that were silent concerning the sit/stand option

---

[14] *See Brummett v. Colvin*, 2015 WL 3777372, at *6 (D. Colo. June 16, 2015) (noting that the ALJ asked the VE if her testimony conflicted with the DOT, and finding that by taking claimant's sitting and standing limitations into account, the VE's testimony was used to verify, clarify, and supplement DOT job descriptions even though the sit-stand was not covered in the DOT); *Anderson v. Colvin*, 2014 WL 1255318, at *9 (D. Utah Mar. 26, 2014) (noting that the VE testified that the DOT did not provide a sit/stand option and finding that a VE's testimony based on the sit/stand restriction provided "more specific information than is contained in the DOT"); *Cowen v. Astrue*, 2010 WL 2925251, at *10-11 (D. Kan. July 21, 2010) (noting that VE testified that job identified could be done with an option to change from standing to sitting or done in either position, and finding that a ALJ properly relied on the VE's testimony that jobs were consistent with DOT in allowing a sit-stand option because it was based on his/her professional experience); *see also Dutcher v. Colvin*, Civ. 13-854 WPL (D.N.M. Dec. 8, 2014) (finding that the VE noted there was no sit-stand option in the DOT for the referenced jobs, but that the ALJ could rely on VE testimony as substantial evidence because the VE explained the basis of testimony on Department of Labor explanations); *Duran v. Colvin*, Civ. 12-739 SMV (D.N.M. Oct. 10, 2013) (finding that the ALJ impermissibly relied on the VE's testimony because the ALJ's identifying that the DOT does not address a sit/stand option, without more, is insufficient).

created a conflict for the ALJ to resolve, particularly since the ALJ's hypothetical and the VE's testimony directly addressed Mr. Feary's need to alternate between sitting and standing.

Here, the ALJ's hypothetical specifically included, *inter alia*, that "the hypothetical person should alternate between sitting and standing every 30 to 35 minutes." (Tr. 495.) When the ALJ asked the VE if there would be any job she could identify at the light level that a person with Mr. Feary's restrictions could do, the VE answered,

> A: And you – the last thing that you'd – well, I missed the alternate standing and sitting. Could you repeat that?
>
> Q: Yes. Alternate, between sitting and standing every 30 to 35 minutes.
>
> A: Okay. At the light level?
>
> Q: Yes.
>
> A: And this person would still – I can assume the person would still be able to perform the job duties? *And it would just be sitting for a short period and standing for a short period*?
>
> Q: Right.

(Tr. 495-96.) (Emphasis added.) The VE then identified certain light level jobs that Mr. Feary could perform based on the ALJ's hypothetical RFC. (Tr. 496-97.) Additionally, when questioned later by Mr. Feary's attorney, the VE testified again that the jobs she identified had accounted for Mr. Feary's need to alternate between sitting and standing every 30 to 35 minutes for a short period of time. Specifically, Mr. Feary's attorney asked, "Just for the record, the jobs that you mentioned, do they take into account the 30 to 35 minute, sit, stand option that the judge limited?" (Tr. 498.) The VE responded, "Yes, as long as the individual is able to still do the job." (*Id.*) Thus, it is clear from the record that the ALJ and Mr. Feary's counsel directly addressed whether the VE considered Mr. Feary's need to alternate between sitting and standing

15

for short periods of time in the jobs she identified. As such, there was no unresolved discrepancy between the VE's testimony and the DOT for the ALJ to resolve. *Newburn*, 62 F. App'x at 304.

For the foregoing reasons, the Court finds that the VE's testimony regarding certain jobs from the DOT that were silent concerning the sit/stand option did not create an apparent conflict that had to be resolved. *Wahpekeche*, 640 F. App'x at 786. There is no reversible error as to this issue.

## V. Conclusion

For the reasons stated above, Mr. Feary's Motion to Reverse and Remand for Rehearing (Doc. 17) is **DENIED.**

_____
**KIRTAN KHALSA**
**United States Magistrate Judge,**
**Presiding by Consent**